UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **CRIMINAL NO. 25-CR-67-AHA** |
| **MATTHEW HONG,** | |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by its undersigned counsel, hereby submits this memorandum in aid of sentencing of defendant Matthew Hong. On April 3, 2025, Hong pleaded guilty pursuant to a plea agreement to one count of false statements in violation of 18 U.S.C. § 1001. Hong's guilty plea arises from false statements that he made which allowed him to receive sick leave compensation while working as an economist at the Bureau of Labor Statistics ("BLS") when he was not, in fact, sick but instead working for a private financial institution during the COVID-19 pandemic. After consideration of the Section 3553(a) factors, the United States respectfully requests that this Court impose a sentence of six months of home confinement (that is, a sentence within the applicable Sentencing Guidelines range), impose a $9,500 fine, and order restitution in the amount that the defendant has agreed to pay in his plea agreement (*i.e.*, $13,316.18).

### I.  PROCEDURAL BACKGROUND

On March 13, 2025, the Government filed a one-count Information charging Hong with false statements in violation of 18 U.S.C. § 1001. On April 3, 2025, Hong entered a guilty plea to the Information as part of a plea agreement with the United States. Sentencing has been set for July 17, 2025.

## II.    FACTUAL BACKGROUND

### a. The Defendant

From approximately April 2020 through July 2023, Hong was an economist at BLS within the U.S. Department of Labor. At BLS, Hong worked on the Current Employment Statistics program within the National Estimates Branch that produced, among other things, the monthly estimates of nonfarm employment numbers. As part of his job at BLS, Hong had access to highly sensitive economic data, including certain Principal Federal Economic Indicators ("PFEI"), such as the employment and unemployment numbers, several days prior to their public disclosure. The PFEI were subject to strict security procedures and safeguards that reflected the sensitivity of the PFEI and their ability to potentially affect financial markets if prematurely disclosed.

Due to the COVID-19 pandemic, Hong worked at BLS remotely from his residence in Washington, D.C. from approximately April 2020 through June 2020. Beginning in June 2020, Hong moved to Middlesex, New Jersey, where he continued to work remotely for BLS through his resignation from BLS in July 2023.

In June 2022—while still employed at BLS but without BLS's knowledge—Hong began full-time employment at Company A, a global financial institution headquartered in New York City. At this second job, Hong worked as a Senior Associate in a group that analyzed and developed macroeconomic scenarios as well as economic narratives and forecasts involving multiple macroeconomic variables which Company A used in its forecasting.

### b. The Criminal Conduct

Hong worked concurrently at BLS and Company A for about fourteen months. On at least 55 different occasions during this period, Hong made false entries in BLS's time and attendance system in which he represented that he was sick on a given workday—and therefore entitled to

sick leave compensation—when, in fact, Hong was not sick but instead working for Company A that day. At the end of each pay period, Hong validated his time entries and certified—falsely—that the leave he recorded in his time entries was true and correct to the best of his knowledge. Based on Hong's false statements to BLS in its time and attendance system, Hong received $13,316.18 in sick leave compensation from BLS to which he was not entitled.

### III. THE APPLICABLE SENTENCING GUIDELINES

To determine an appropriate sentence, the Court must first accurately calculate each Defendant's advisory Sentencing Guidelines Range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). As the Presentence Investigation Report reflects, Hong's advisory Sentencing Guidelines Calculation is:

| Guideline | Description | Offense Level |
|---|---|---|
| § 2B1.1(a)(2) | Base Offense Level | 6 |
| § 2B1.1(b)(1)(B) | Loss Amount between $6,500 and $15,000 | +2 |
| § 3E1.1(a) | Acceptance of Responsibility | -2 |
| § 4C1.1 | Adjustment for Certain Zero-Point Offenders | -2 |
| **Total** | | 4 |

Accordingly, Hong's Estimated Offense Level is 4. His lack of criminal record places him in Criminal History Category I. The resulting advisory Guidelines range of 0 to 6 months' imprisonment and a fine between $500 and $9,500.

### IV. The Appropriate Sentence Considering the Factors Set Forth in Section 3553(a)

To determine an appropriate sentence, after the Court accurately calculates each Defendant's advisory Guidelines range, it should consider the various factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. These factors include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant, (ii) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford

adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment, (iii) the Sentencing Guidelines and related Sentencing Commission policy statements, (iv) the need to avoid unwarranted sentence disparities among similarly-situated defendants, and (v) the need to provide restitution to the victim of the crime. In light of the § 3553(a) factors, the United States respectfully requests that the Court impose a sentence within the Guidelines range and a $9,500 fine, as well as to order restitution in the amount of the sick leave compensation (*i.e.*, $13,316.18) that Hong received from BLS because of his false statements.

### a. Nature and Circumstances

The nature and circumstances of the offense in this case are important in evaluating the appropriate sentence for the defendant under § 3553(a). Here, the economic loss caused by Hong's repeated, numerous false statements understates the severity of his offense. For Hong's motive in committing this crime was not simply to get paid sick leave to which he was not entitled – it was to conceal (using the false sick leave entries) Hong's other job at a global financial institution from his BLS employer. As no one could reasonably deny, had it known, BLS would not have permitted him to simultaneously work at both a BLS position with access to highly sensitive economic data while concurrently working for a private entity in economic forecasting and analysis.

The reason is obvious: Hong's false statements to BLS created a significant risk that highly sensitive economic data—such as confidential jobs and employment numbers—would be prematurely disclosed, would allow certain entities and individuals to profit from having this information before it becomes public, and would significantly affect the financial markets.

As an economist in the National Estimates Branch at BLS, Hong estimated important employment metrics, such as monthly employment numbers. BLS released this data on the first Friday of every month in a "jobs report," which was widely publicized because it was an important indicator of economic activity and was information that affected both the stock and bond markets. *See, e.g.*, https://www.schwab.com/learn/story/why-jobs-report-matters-to-investors. Hong was among the limited number of BLS employees who learned what the jobs report would be several days before BLS released them publicly.

Hong understood that confidential BLS economic data, including the jobs report, was subject to strict security measures meant to prevent its release to the public until the designated time for release. For example, Hong and other BLS employees who had access to the data were not allowed to answer phones calls or respond to email inquiries from the public during the week that BLS compiled and released the data publicly. Hong understood that these rigorous security protocols were put in place to avoid the possibility that information about the data might accidentally leak. If a market participant had possession of this confidential economic data prior to its release, they could trade in advance and potentially reap a significant windfall from the market's reaction after the public release of the data.

Despite all of this, in June 2022, Hong began working a second full-time job—while still employed BLS—at Company A, a New York-based global financial institution as a Senior Associate in its Firmwide Economic Scenarios & Analytics group. In that role, he worked with other Company A employees to make economic forecasts that could be used by the firm's traders and clients.

Hong said he did not use the information he learned from BLS in connection with his work Company A. The government is not aware of evidence demonstrating that Hong used BLS's data

or improperly disclosed it to others at Company A. However, in working for Company A when he knew what the jobs report would be, Hong created a substantial risk that this key financial data would influence his judgments in making economic forecasts for Company A's traders and clients and accidentally leak in conversations with colleagues. This could have allowed Company A and its clients to learn what the jobs report was going to be in advance of its public release and to profit by trading ahead of other market participants who did not have this information.

But regardless of whether Hong actually personally benefitted from the use of the highly-sensitive non-public data in his other job, his campaign of false statements concealing his other employment was still motivated by greed: maintaining the second private sector job that he could not have kept had BLS known of it.

### b. History and Characteristics

The second factor that the Court must consider in fashioning an appropriate sentence is the history and characteristics of the defendant. The portrait set forth in the Presentence Report is not one that excuses Hong's behavior, nor provides a reason to depart from the guidelines.

### c. The Need to Promote Respect for the Law and Provide Just Punishment and Adequate Deterrence

The defendant's sentence must also reflect the seriousness of the offense in order to promote the rule of law and provide just punishment and adequate deterrence. Hong's sentence must demonstrate to others that there are significant consequences for falsely taking sick leave on dozens of days as well as for creating a substantial risk that highly sensitive government economic information may leak prematurely and be used improperly. Accordingly, the government submits that the appropriate sentence in this case should include six months of home detention and a meaningful fine.

## V. FORFEITURE, RESTITUTION AND SPECIAL ASSESSMENT

The Government is not seeking forfeiture but is seeking restitution. The Parties agree that the Court has an obligation to determine whether, and in what amount, mandatory restitution applies under 18 U.S.C. § 3663A. Here, as described above, the loss to the Government was $13,316.18. Additionally, in this case, a special assessment of $100 is mandatory. *See* 18 U.S.C. § 3013(a)(2)(A).

## VI. FINE

In addition, the parties agree that, pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines level 4, the estimated applicable fine range is $500 and $9,500. In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d). Hong has the financial resources to pay a meaningful fine. Though Hong is not currently employed, as Probation has detailed in its Presentence Investigation Report, he has about $60,000 in two brokerage accounts. (This is in addition to his having accumulated over $180,000 in his retirement accounts.) Notably, during the pendency of this case, Hong purchased a Tesla Model 3 in his father's name. In light of these resources, the Government is asking this Court to order Hong to pay a $9,500 fine.

## VII. CONCLUSION

Hong's conduct must not be taken lightly. He has admitted his wrongdoing and taken responsibility for his actions. However the need for deterrence in a case like this is vital. The public must be able to trust that government employees who have access to highly sensitive and valuable economic data are not putting the confidentiality of that data at risk for their own personal gain. And supervisors throughout the government must be able to trust that when an employee represents that they are entitled to sick leave compensation, it is because they truly are sick, and

are not using those false leave days to conceal a second position at a private employer (especially one in tension with their job duties). To deter such conduct, the sentence must include an appropriate punitive component, which is why the government seeks the sentence described herein.

The Government asks the Court to impose a sentence of six months of home confinement (that is, a sentence within the applicable Sentencing Guidelines range) and a $9,500 fine, as well as to order restitution in the amount that the defendant has agreed to pay in his plea agreement (*i.e.*, $13,316.18).

Respectfully submitted,

| | |
|---|---|
| LORINDA I. LARYEA<br>Acting Chief, Fraud Section<br>Criminal Division<br>United States Department of Justice | JEANINE FERRIS PIRRO<br>United States Attorney |
| By: */s/ Matthew F. Sullivan*<br>Matthew F. Sullivan (NY Bar #4785952)<br>Trial Attorney<br>Andrew Tyler (DC Bar #1015028)<br>Acting Assistant Chief<br>1400 New York Avenue N.W.<br>Washington, DC 20530<br>(202) 578-6583 (Sullivan)<br>(202) 616-2634 (Tyler)<br>matthew.sullivan2@usdoj.gov<br>andrew.tyler@usdoj.gov | By: */s/ Rami Sibay*<br>Rami Sibay (VA Bar #41897)<br>Special Assistant United States Attorney<br>601 D Street, N.W.<br>Washington, DC 20530<br>(240) 278-0562<br>rami.sibay@usdoj.gov |

**CERTIFICATE OF SERVICE**

    I, Matthew F. Sullivan, hereby certify that on July 10, 2025, I caused the foregoing filing to be electronically filed with the Clerk of Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to the parties who have entered an appearance in this case.

                                                    /s/ *Matthew F. Sullivan*
                                                    Matthew F. Sullivan
                                                    Trial Attorney
                                                    United States Department of Justice
                                                    Criminal Division, Fraud Section